# In the United States Court of Federal Claims

No. 19-1112T
(Filed: August 9, 2021)
**FOR PUBLICATION**

```
*****************************************
GANNON MCCAFFERY and        *
TAYLOR MCCAFFERY,            *
                            *
         Plaintiffs,        *
                            *
v.                          *
                            *
THE UNITED STATES,          *
                            *
         Defendant.         *
                            *
*****************************************
```

*Douglas L. Salzer*, Ajubita Leftwich & Salzer LLC, New Orleans, LA, for Plaintiffs.

*Karen Elisabeth Servidea*, Tax Division, Court of Federal Claims Section, United States Department of Justice, Washington, D.C., for Defendant. With her on briefs were *David A. Hubbert*, Acting Assistant Attorney General, Tax Division, *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, and *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

Plaintiffs Gannon and Taylor McCaffery ("Plaintiffs" or "the McCafferys") have sued the United States for a refund of allegedly overpaid federal income tax. Compl. ¶¶ 1–3 (ECF 1). The United States moved to dismiss for lack of subject-matter jurisdiction.[1] The issue presented is whether Plaintiffs timely submitted a claim for overpayment to the Internal Revenue Service (IRS), as they were required to do before filing suit. I hold that they did not. This Court therefore **GRANTS** the motion and **DISMISSES** the complaint.

## BACKGROUND

Those who overpay federal income taxes may apply to the IRS for a tax refund. A claim for a refund generally must be filed by the taxpayer "within 3 years from the

---

[1] Def.'s Mot. to Dismiss (ECF 11); *see also* Pls.' Opp. (ECF 12); Def.'s Reply (ECF 15). The parties submitted supplemental briefs on this Court's request. *See* Pls.' Supp. Br. (ECF 20); Def.'s Supp. Br. (ECF 21); *see also* Order (ECF 18).

time the return was filed[.]" I.R.C. § 6511(a). Untimely claims must be denied. I.R.C. § 6511(b)(1).

Timely filing can be accomplished in one of two ways: by delivering the claim to the IRS within the deadline, *see Doyle v. United States*, 88 Fed. Cl. 314, 320 (2009); *Buttke v. United States*, 13 Cl. Ct. 191, 192 (1987), or by mailing in accordance with the "deemed delivery" rule. The deemed delivery rule provides that when a document is delivered to the IRS by United States mail after an Internal Revenue Code deadline, "the date of the United States postmark stamped on the cover in which such [document] is mailed shall be deemed to be the date of delivery," given the postmark's date is on or before the deadline and the mailing was otherwise proper. I.R.C. § 7502(a).[2] Three other types of documentation of mailed documents — non-United States Postal Service postmarks, mail registration, and markings made by private delivery services — may be treated as equivalent to postmarks. I.R.C. § 7502(b), (c), (f).

Treasury regulations set out additional requirements for using a postmark to satisfy the deemed delivery rule. The regulations establish that the taxpayer bears the risk if the postmark does not qualify:

> If the postmark does not bear a date on or before the last date, or the
> last day of the period, prescribed for filing the document or making the
> payment, the document or payment is considered not to be timely filed
> or paid, regardless of when the document or payment is deposited in the

---

[2] Internal Revenue Code Section 7502(a) provides, in full:
 (a) General rule.
 (1) Date of delivery. If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.
 (2) Mailing requirements. This subsection shall apply only if —
   (A) the postmark date falls within the prescribed period or on or before the prescribed date—
     (i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or
     (ii) for making the payment (including any extension granted for making such payment), and
   (B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

> mail. Accordingly, the sender who relies upon the applicability of section
> 7502 assumes the risk that the postmark will bear a date on or before
> the last date, or the last day of the period, prescribed for filing the
> document or making the payment.

26 C.F.R. § 301.7502-1(c)(1)(iii). A taxpayer can avoid that risk by using registered mail:

> If the document or payment is sent by U.S. registered mail, the date of
> registration of the document or payment is treated as the postmark date.
> If the document or payment is sent by U.S. certified mail and the
> sender's receipt is postmarked by the postal employee to whom the
> document or payment is presented, the date of the U.S. postmark on the
> receipt is treated as the postmark date of the document or payment.
> Accordingly, the risk that the document or payment will not be
> postmarked on the day that it is deposited in the mail may be eliminated
> by the use of registered or certified mail.

26 C.F.R. § 301.7502-1(c)(2). The regulations also provide for use of extrinsic evidence to prove the contents of an illegible postmark:

> If the postmark on the envelope is made by the U.S. Postal Service but
> is not legible, the person who is required to file the document or make
> the payment has the burden of proving the date that the postmark was
> made.

26 C.F.R. § 301.7502-1(c)(1)(iii).

With that legal background in mind, the facts of the case are as follows.[3] Plaintiffs filed their federal income tax return for the 2013 tax year on April 15, 2014 with a total tax liability of $70,977. Compl. ¶¶ 6–7; Def.'s App. B at B-1–B-2 (ECF 11-1). In 2017, Plaintiffs filed an amended tax return claiming an overpayment of $69,080 for the 2013 tax year and requesting a refund in that amount. Compl. ¶ 8; Def.'s Mot. to Dismiss at 3; Def.'s App. B at B-15, B-17. The parties agree (and it appears to the Court) that the deadline for claiming an overpayment was April 18, 2017. Def.'s Mot. to Dismiss at 5; Pls.' Opp. at 1, 3.[4] But the IRS noted the receipt date of Plaintiffs' amended return as April 24, 2017 — six days later.

---

[3] The Court of Federal Claims takes well-pleaded factual allegations as true, but when jurisdiction is challenged as a factual matter, the Court must find facts sufficient to support jurisdiction. *See Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012) (citing *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993)).

[4] The section 6511(a) deadline for the refund claim — three years from the date of when the return was filed — was April 15, 2017. However, that day was a Saturday, and the following Monday, April

The IRS scanned the following image of the envelope in which Plaintiffs' amended return arrived, though it did not keep the actual envelope:



Def.'s App. B at B-35.[5]

The image has Plaintiffs' surname and address handwritten on the top left, the IRS's address centered, and four postage stamps in the top right corner. Each stamp

---

17, 2017, was a holiday in the District of Columbia (D.C. Emancipation Day). *See* Holiday Schedules for 2016 and 2017, *available at* https://dchr.dc.gov/page/holiday-schedules-2016-and-2017 (last visited Aug. 2, 2021). "When the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday. For purposes of this section . . . the term 'legal holiday' means a legal holiday in the District of Columbia." I.R.C. § 7503. That places the deadline for Plaintiffs to have filed their refund claim on Tuesday, April 18, 2017.

[5] The loss of the original envelope was inconsistent with IRS operating procedures that required the agency to retain it. Internal Revenue Manual 3.10.72-6, 2017 WL 7435412 (Mar. 1, 2016) (indicating that regardless of the timeliness of receipt by the IRS, proper procedure is to date, stamp, and keep the envelope containing an IRS form 1040X amended return).

bears the same two lines of text: "US POSTAGE $0.49" and "SOLD APR [] FIRST CLASS."). *Id.* The bottom-right stamp appears to read "SOLD APR 17, 2017 FIRST CLASS," but the exact dates on the others are illegible. *Id.* The envelope bears the partly legible date "04/24/201[]" near the bottom right, and an alphanumerical sequence — "09B 030" — across the stamps along the right edge. Several dots and lines appear near the middle of the top edge of the envelope, but they do not form any distinct characters, shapes, or images, and there is no way to tell how they were made.

In a letter dated August 3, 2017, the IRS disallowed Plaintiffs' claim as untimely: "The received date on your return is Apr. 24, 2017. The last day to file a timely claim or return for tax year 2013 was Apr. 15, 2017 [*sic*]. We can't allow your claim or return because the received date isn't on or before the deadline." Pls.' Ex. B (ECF 1-1). Plaintiffs then filed suit, seeking a refund of $69,080 for the 2013 tax year. Compl. ¶¶ 3, 16.

The United States moved to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1) and 12(h)(3). This Court held a hearing on the motion. *See* Tr. of Oral Arg. (ECF 23). Although the Court offered the parties an opportunity to present oral testimony, the parties agreed not to do so. *See* Joint Proposal at 2 (ECF 19). Instead, the parties stipulated (1) to the authenticity and admissibility of several documents, and (2) that individuals who signed declarations in opposition to the motion to dismiss would testify consistently with those declarations if called. *Id.* at 1–2. Plaintiff Gannon McCaffery declared that he delivered the couple's amended return to the post office after purchasing stamps on April 17, 2017, then sent an email to his accountant confirming delivery. *See* App. to Pls.' Opp. to Mot. to Dismiss at A-4–A-5 (ECF 12-1) (G. McCaffery Decl.). Plaintiffs' accountant authenticated her receipt of the email. *See id.* at A9 (A. Gomila Decl.).

## DISCUSSION

### I.  Legal Standards

A plaintiff in this Court must establish subject matter jurisdiction by a preponderance of the evidence. *Keehn v. United States*, 110 Fed. Cl. 306, 318–19 (2013) (citing *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010)). If a plaintiff fails to do so, the case must be dismissed. RCFC 12(h)(3); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Lovett v. United States*, 145 Fed. Cl. 175, 178 (2019); *St. Bernard Par. Gov't v. United States,* 916 F.3d 987, 992–93 (Fed. Cir. 2019).

In this case, jurisdiction is premised on the Tucker Act, which authorizes the Court to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or

unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not confer any substantive rights, *United States v. Testan*, 424 U.S. 392, 398 (1976), so a plaintiff seeking to invoke Tucker Act jurisdiction must identify an independent right to money from the United States. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (citing to *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)).

This Court has jurisdiction to hear claims for refunds of internal revenue taxes "alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). But in order for this Court to maintain jurisdiction over refund claims, the taxpayer must first have filed a timely refund claim according to IRS guidelines. *See* I.R.C. §§ 6511(a), 7422(a); *see also United States v. Dalm*, 494 U.S. 596, 602 (1990) ("[U]nless a claim for refund of a tax has been filed within the time limits imposed by [I.R.C.] § 6511(a), a suit for refund . . . may not be maintained in any court.").

## II. Analysis

The parties do not dispute that Plaintiffs' refund application was delivered to the IRS after the April 18, 2017 actual-delivery deadline. Given that this Court lacks jurisdiction over tax refund claims that are not timely presented to the IRS, *see Dalm*, 494 U.S. at 602, the issue is whether Plaintiffs have established timeliness under the deemed delivery rule.

The Internal Revenue Code and Treasury's implementing regulations provide the sole framework for deciding that question. As noted above, the Code and regulations establish deadlines, *see* I.R.C. § 6511(a), with enumerated exceptions, *see* I.R.C. § 7502; *see also* 26 C.F.R. § 301.7502-1(c)(1)(iii). This Court has generally treated the specified exceptions as exclusive, ruling out other exceptions that Congress might have enacted but did not. *See Martinez v. United States*, 101 Fed. Cl. 688, 693 (2012) ("[It is] longstanding Court of Federal Claims precedent that § 7502 contains the only exceptions to the physical delivery rule.").[6] That tallies with the general rule that "when an instrument enumerates exceptions to a power or

---

[6] A separate question about the common-law mailbox rule divided federal courts. Under the mailbox rule, when *delivery* of a document is in doubt, proof of proper *mailing* "gives rise to a rebuttable presumption that the document was physically delivered to the addressee in the time such a mailing would ordinarily take to arrive." *Taha v. United States*, 148 Fed. Cl. 37, 43 (2020). Some courts recognized the mailbox rule in tax refund cases, *see Anderson v. United States,* 966 F.2d 487, 491–92 (9th Cir. 1992); *Estate of Wood v. Comm'r*, 909 F.2d 1155, 1160 (8th Cir. 1990), while others did not, *see Deutsch v. Comm'r*, 599 F.2d 44, 46 (2d Cir. 1979); *Miller v. United States*, 784 F.2d 728, 730–31 (6th Cir. 1986). The Treasury has since established by regulation the exclusive means of proving delivery. 26 C.F.R. § 301.7502-1(e)(2)(i). Here, where delivery of Plaintiffs' application to the IRS is not in dispute, debates over the mailbox rule have no direct significance. Nor do any clear conclusions flow from the fact that Treasury regulations settled debates about the mailbox rule, but not the issue in this case.

- 6 -

prohibition created elsewhere in the same document, [courts] typically treat[] the enumeration as exhaustive." *See* John F. Manning, *Continuity and the Legislative Design*, 79 Notre Dame L. Rev. 1863, 1889 n.30 (2004) (collecting Supreme Court cases); *see also, e.g.*, *Botany Worsted Mills v. United States*, 278 U.S. 282, 289 (1929) ("When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.").

As relevant here, the statutes and regulations establishing the deemed delivery rule lift the section 6511(a) deadline only for United States mail postmarks and certain equivalents, *e.g.*, registered and certified mail or private delivery services. I.R.C. § 7502; 26 C.F.R. § 301.7502-1(c). The parties appear to agree, however, that the photocopy of the envelope retained by the IRS lacks a legible postmark. Tr. of Oral Arg. at 29, 36, 47–48, 50.

That agreement is justified by the law and the evidence. The Postal Service states that "a postmark indicates the location and date the Postal Service accepted custody of a mailpiece, and it cancels affixed postage." U.S. Postal Serv., Handbook PO-408 - Area Mail Processing Guidelines, § 1-1.3 (2008). The markings on the envelope do not meet that description. Courts also indicate that the term "postmark" denotes something distinct from a postage stamp or the envelope's other legible markings. *See United States v. Maude*, 481 F.2d 1062, 1065–66 (D.C. Cir. 1973); *Bill Wright Toyota, Inc. v. Comm'r*, 63 T.C.M. (CCH) 3146, 1992 WL 129869 (1992); *Traxler v. Comm'r*, 63 T.C. 534, 536 (1975). Dictionaries make the same distinction. *Postmark*, Oxford English Dictionary, https://www.oed.com/view/Entry/148585?rskey=QMSTMk&result=1&isAdvanced=false#eid (last visited Aug. 2, 2021) ("An official mark stamped on a letter or other postal package for various purposes; formerly usually bearing the name of the office at which the letter was posted, the amount of postage, and an indication of whether the postage was paid or unpaid; later giving the place, date, and time of dispatch or arrival, and (in the case of stamped items) serving also to cancel the stamp."); *Postmark*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/postmark (last visited Aug. 2, 2021) ("[A]n official postal marking on a piece of mail specifically: a mark showing the post office and date of mailing."); Def.'s Mot. to Dismiss at 8 ("[A]n official postal marking on a piece of mail; *specif*: a mark showing the name of the post office and the date and sometimes the hour of mailing and often serving as the actual and only cancellation.") (citing *Webster's Third New International Dictionary of the English Language* 1772–73 (3d ed. 1986)).

Nor does the evidence permit me to find that the envelope bears an illegible postmark. Although the envelope's image has illegible markings along the top edge

where postmarks are often applied, they do not form any images, shapes, or characters suggestive of a postmark. At most, some of the marks might form a vertical line. Even if it were possible to construe the markings as an illegible postmark, it is also possible that they are only meaningless blemishes on the envelope, or products of the IRS scanning machine. It is Plaintiffs' burden to prove jurisdiction as a factual matter, *Keehn*, 110 Fed. Cl. at 318, so the theoretical possibility that the marks formed a postmark cannot suffice. *Cf. Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) ("Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction.").

   Although Plaintiffs claim that the Postal Service ordinarily applies postmarks to envelopes like the one containing Plaintiffs' amended return, *see* Pls.' Supp. Br., the presumption of regularity does not allow me to presume that a postmark was applied when none is visible and where no other evidence shows one was applied. *See United States v. Roses, Inc.*, 706 F.2d 1563, 1567 (Fed. Cir. 1983). And although the IRS lost the envelope itself, I decline to draw an adverse inference that the envelope originally had a postmark. Some cases have permitted "[c]ircumstantial proof of timely postmark [when] the IRS has lost or destroyed the envelope." *See Lewis v. United States*¸ 942 F. Supp. 1290, 1293, 1295 (E.D. Cal. 1996) (collecting cases). But here, the IRS at least retained a scanned image, and there is no evidence that the IRS was any more than negligent in destroying the original. *Cf. Stocker v. United States*, 705 F.3d 225, 236 (6th Cir. 2013) (declining to impose spoliation sanctions for loss of an original envelope).

   The next question is what to do in the absence of a postmark. Plaintiffs propose using extrinsic evidence to show that the envelope was mailed on April 17, 2021.[7] But on the plain text of section 7502, the deemed delivery rule only applies if a postmark or equivalent marking was made: The date of the postmark is what matters, not the date of the mailing. I.R.C. § 7502(a) ("[T]he date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery[.]"). Similarly, the regulations provide for extrinsic evidence only to prove the contents of an illegible postmark, not to prove time of mailing when there was no postmark. 26 C.F.R. § 301.7502-1 ("If the postmark on the envelope *is made* by the U.S. Postal Service *but is not legible*, the person who is required to file the document or make the payment has the burden of proving the date that the postmark *was made*.") (emphasis added).

---

[7] Their evidence bears only on mailing; they do not offer any evidence that a postmark was actually applied and was later obliterated. I do not decide whether such circumstances would involve an illegible postmark within the meaning of Treasury regulations.

As noted above, exceptions to a statutory requirement should generally be treated as exclusive. Without even an illegible postmark, the deemed delivery rule does not apply, and extrinsic evidence about the date of mailing is beside the point. That leaves only the dispositive fact that the amended return was delivered to the IRS after the delivery deadline.

Plaintiffs argue that extrinsic evidence may be used to prove the date of mailing for purposes of the deemed delivery rule even when the postmark is absent. They cite a line of cases from the Tax Court holding that extrinsic evidence as to timely mailing must be considered when an envelope contains no postmark at all. Pls.' Opp. at 5 (citing to *Sylvan v. Comm'r*, 65 T.C. 548 (1975); *Seely v. Comm'r*, 119 T.C.M. (CCH) 1031, 2020 WL 201751 (2020); *Williams v. Comm'r*, 117 T.C.M. (CCH) 1328, 2019 WL 2373552 (2019); *Blake v. Comm'r*, 94 T.C.M. (CCH) 51, 2007 WL 2011294 (2007); *Menard, Inc. v. Comm'r*, 41 T.C.M. (CCH) 1279, 1981 WL 10531 (1981); *Monasmith v. Comm'r*, 38 T.C.M. (CCH) 60, 1979 WL 3117 (1979); *Ruegsegger v. Comm'r*, 68 T.C. 463 (1977)). That line of cases, however, originates in conceptual errors by the Tax Court in *Sylvan*.

In that case, much like this one, the Tax Court confronted an envelope with no postmark that was delivered after a deadline. The court found a gap in the statute: "There is nothing at all in the statute or legislative history indicating what Congress intended where the postmark is illegible; where there is no postmark because the petition was inserted in a new postal cover when the original cover was damaged; or where no postmark is affixed due to oversight or malfunction of a machine." *Sylvan*, 65 T.C. at 552. "[I]n these circumstances," the court reasoned, its "task … is to ask what Congress would have intended on a point not presented to its mind, if the point had been present." *Id.* (quotes omitted). The court concluded, over a dissent, that extrinsic evidence should be admitted to prove the date of mailing for purposes of the deemed delivery rule not only when a postmark is illegible, but where it is absent.

That was erroneous for several reasons. To begin with, the Tax Court was mistaken that the Internal Revenue Code contains "nothing at all … indicating what Congress intended" in cases of absent postmarks. *Id.* Section 6511(a) contains a deadline, and section 7502 contains a deemed-delivery exception that is textually inapplicable when a postmark is missing. There is thus no gap to be filled; a late-received envelope lacking a postmark is simply untimely, whatever the extrinsic evidence might be. When a court treats circumstances covered by a general rule as falling into a gap, the court is not really "ask[ing] what Congress would have intended," *Sylvan*, 65 T.C. at 552, but presuming that the statute should say

something different.[8] *See also* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 94 (2012) ("As Justice Louis Brandeis put the point: 'A *casus omissus* does not justify judicial legislation.' And Brandeis again: 'To supply omissions transcends the judicial function.'") (citing *Ebert v. Poston*, 266 U.S. 548, 554 (1925), and *Iselin v. United States*, 270 U.S. 245, 251 (1926)).

Besides, when *Sylvan* was decided, the Treasury had already promulgated the regulation providing for extrinsic evidence of the contents of illegible postmarks, but not absent ones. *See* Republication, 32 Fed. Reg. 15241, 15355 (Nov. 3, 1967); *see also Sylvan*, 65 T.C. at 560 (Drennen, J., dissenting) (noting that the regulations then in effect "provide[] that if the postmark on the envelope is not legible, the petitioner has the burden of proving the time when the postmark was made").  By sanctioning proof by extrinsic evidence in *other* circumstances, the Tax Court merely created a new exception that neither Congress nor the administering agency authorized.[9] That, too, is inappropriate: A judge should not "elaborate unprovided-for exceptions to a text, as Justice Blackmun noted while a circuit judge: 'If the Congress had intended to provide additional exceptions, it would have done so in clear language.'" Scalia & Garner, *supra*, at 93 (citing *Petteys v. Butler*, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting)). Nor should a court assume that because a legislature provided relief from a general rule in one circumstance, similar relief should be applied in other circumstances. *See* Easterbrook, *supra*, at 541 ("Legislators seeking only to further the public interest may conclude that the provision of public rules should reach so far and no farther[.]").

Limiting judicial discretion to elaborate on enacted texts is especially important when it comes to this Court's jurisdiction. This Court's authority to hear cases brought against the United States rests on waivers of sovereign immunity which must be interpreted strictly. *See Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983) ("[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be

---

[8] Even in cases of actual congressional silence, it is generally inappropriate to ask what Congress "would have" done. Silence is sometimes itself part of a legislative framework. *See*, *e.g.*, Frank H. Easterbrook, *Statutes' Domains*, 50 U. Chi. L. Rev. 533, 540 (1983) ("Almost all statutes are compromises, and the cornerstone of many a compromise is the decision, usually unexpressed, to leave certain issues unresolved.").

[9] Likewise, as the dissent in *Sylvan* observed, "where there is no postmark on the envelope … the most the outside evidence could prove would be what the postmark date would have been had a postmark been stamped on the envelope in due course. This would not make section 7502 applicable because it would not be 'the date of the United States postmark stamped on the cover' as required by section 7502(a)." *See Sylvan*, 65 T.C. at 565 (Drennen, J., dissenting).

strictly observed, and exceptions thereto are not to be lightly implied."); *see also*, *e.g.*, *Sumner v. United States*, 71 Fed. Cl. 627, 629 (2006). That makes it inappropriate to find jurisdiction by implying additional exceptions to Plaintiffs' deadlines, or otherwise enlarging the deemed delivery rule.

In short — contrary to *Sylvan* — cases like this one are controlled by the plain text of the relevant statutes and regulations. *See*, *e.g.*, *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) ("If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning.") (citing *Roberto v. Dep't of the Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006)).

The result in this case is harsh. Mr. McCaffery has declared — without contradiction, and with some circumstantial corroboration — that he mailed the amended return on a day when it would have been deemed timely, if it only had been postmarked. In *Sylvan*, the date of receipt left the court with "no doubt whatsoever" that the envelope was mailed on a day when a contemporaneously applied postmark would have satisfied the deemed delivery rule. 65 T.C. at 550–51. Plaintiffs cite other cases where it seems unfair not to consider evidence of mailing. *E.g.*, Pls.' Opp. at 8 (citing to *Glenn v. Comm'r*, 105 T.C.M. (CCH) 1228, 2013 WL 424879 (2013) (noting that the Postal Service's employee made an error, and but for that error, the envelope in question would have contained a timely postmarked date)). One can even imagine two filings with the same deadline mailed on the same day, one with a missing postmark and one with an illegible postmark, where extrinsic evidence on deemed delivery can only be admitted as to the latter. Like many bright-line rules, the deemed delivery rule might be simple and predictable to administer, but its results are not always satisfying in close cases.

Yet the text controls. The Supreme Court recently addressed a strikingly similar situation in *Pereida v. Wilkinson*, which held that noncitizens challenging removal orders under the Immigration and Nationality Act have the burden of proving "all aspects of their eligibility" for relief. 141 S. Ct. 754, 758 (2021). Much like the McCafferys, the noncitizen facing removal in *Pereida* argued that under the Court's interpretation, some individuals entitled to relief might be unable to prove it "through no fault of [their] own," perhaps because of "poor state court record-keeping practices." *Id.* at 766. The Court answered that it was bound to the policy choice reflected in the statute: "It is hardly this Court's place to pick and choose among competing policy arguments like these along the way to selecting whatever outcome seems to us most congenial, efficient, or fair. Our license to interpret statutes does not include the power to engage in such freewheeling judicial policymaking." *Id.* at 766–67; *see also BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542 (2021) (observing that a court's task "is to discern and apply the law's plain

meaning as faithfully as we can, not 'to assess the consequences of each approach and adopt the one that produces the least mischief'") (quoting *Lewis v. Chicago*, 560 U.S. 205, 217 (2010)).[10] The same is true here.

### CONCLUSION

For the reasons set forth above, the Government's motion to dismiss this suit for lack of subject matter jurisdiction is **GRANTED**. The case is **DISMISSED**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge

---

[10] The Court also pointed out that the alien "may have overlooked some of the tools Congress afforded aliens faced with record-keeping challenges." *Pereida*, 141 S. Ct. at 767. Taxpayers like the McCafferys, by the same token, can entirely avoid the risk of an omitted postmark by sending tax refund claims by registered or certified mail. *See* I.R.C. § 7502(c); 26 C.F.R. § 301.7502-1(c)(2).